FILED
2001 MAR 23 PM 4: 19
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN A. FARMILOE, | ) | |
| | ) | CASE NO. 1:98 CV 2903 |
| Plaintiff, | ) | |
| | ) | JUDGE LESLEY WELLS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| FORD MOTOR COMPANY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

This matter is before the Magistrate Judge pursuant to an order from Judge Wells, in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1, referring the matter for a Report and Recommendation on Ford Motor Company's ("defendant's" or "Ford's") Motion for Summary Judgment. For the reasons set forth in detail below, the Magistrate Judge recommends that the defendant's Motion for Summary Judgment (Doc. No. 13) be DENIED.

**Procedural History**

John A. Farmiloe ("plaintiff" or "Farmiloe") filed a complaint in this Court on December 15, 1998 and an amended complaint on July 2, 1999. (Doc. Nos. 1, 9.) Plaintiff dismissed Counts II (age discrimination) and III (breach of contract) of his amended complaint after the defendant filed its Motion for Summary Judgment. Count I, which is the only remaining count,

uwl 3-23-01

49

alleges discrimination under the Americans with Disabilities Act.

## Factual Background

For purposes of this Motion for Summary Judgment, the Court treats the following facts as true.[1]

Farmiloe began working for Ford as an hourly production employee in Walton Hills Stamping Plant in approximately 1963 or 1964. (Defendant's Motion for Summary Judgment [hereinafter "Defendant's Motion"], Farmiloe Depo., p. 9; Plaintiff's Response to Defendant's Motion for Summary Judgment [hereinafter "Plaintiff's Response"], Farmiloe Affidavit, ¶ 4.) During the early part of 1983, Farmiloe took medical leave from Ford due to dependence on valium and ulcerative colitis. (Defendant's Motion, Rollins Aff., ¶ 6.) In either 1983 or 1984, Ford terminated Farmiloe for allegedly failing to respond to a five-day quit notice. (Defendant's Motion, Farmiloe Depo., p. 53-54.) Ford reinstated Farmiloe after his physician wrote a letter to Ford explaining that Farmiloe's failure to contact Ford may have been caused by his condition. (Defendant's Motion, Exhs. C & D.) In 1985, Farmiloe took another brief medical leave.

---

[1] This Court has used its best efforts to discern and set forth the facts in this case. Not all of the factual allegations relayed by the parties in their respective briefs were supported by the citations provided and/or contained in the parts of the depositions filed with the court. This Court has attempted to find each alleged fact within the entire submitted record, even if the citation is to a general document. The Court is not obliged to take further extraordinary steps to find undisputed facts. "[W]hile [a party] is not obligated to cite specific page numbers [in a person's deposition], he should 'point out the location of . . . the designated portion of the record [which] must be presented with enough specificity that the . . . court can readily identify facts upon which the . . . party relies.'" *Centerior Service Company v. ACME Scrap Iron & Metal*, 104 F. Supp.2d 729, 735 (N.D. Ohio 2000) (Gaughan, J.) (*citing InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)). This Court is "not required to speculate on which portion of the record the . . . party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the . . . party's claim." *Id.*

(Defendant's Motion, Farmiloe Depo., p. 44, Rollins Aff., ¶ 7.) In January of 1988, Ford granted Farmiloe disability retirement due to neck and back pain. (Plaintiff's Response, Farmiloe Aff., ¶ 3.)

Farmiloe is a member of the United Auto Workers ("UAW") union. (Plaintiff's Response, Farmiloe Aff., ¶ 6.) The UAW, which represents the manufacturing employees at Ford, and Ford have had an agreement in place since 1990, under which an hourly disability retiree may return to work once the retiree is no longer disabled. (Plaintiff's Response, Farmiloe Aff., ¶ 6.)

In October of 1991, Farmiloe approached Ford about returning to work from his disability retirement and provided Ford's physician, Dr. Arlen Rollins ("Rollins"), with a return to work notice from Dr. Papa, his physician. (Defendant's Motion, Farmiloe Depo., p. 60, Rollins Aff., ¶ 10.) Dr. Papa opined that Farmiloe had chronic injuries which could be aggravated by working. (Defendant's Motion, Farmiloe Depo., p. 60, Rollins Aff., ¶¶ 10, 11.) Ford did not allow Farmiloe to return. (Plaintiff's Response, Farmiloe Aff., ¶ 5.)

In November of 1991, Farmiloe again approached Rollins about returning to work. (Defendant's Motion, Rollins Aff. ¶ 13.) After Farmiloe informed Rollins that he had joined Alcoholic's Anonymous, Rollins asked Farmiloe to authorize release of all his medical records from Kaiser Permanente, Farmiloe's medical provider. (Defendant's Motion, Farmiloe Depo., p. 125, Rollins Aff., ¶¶ 13-15.) Farmiloe signed the release, but later rescinded the authorization on the advice of his union before Rollins received the records. (Defendant's Motion, Farmiloe Depo., p. 62, Rollins Aff., ¶ 17.) Ford did not allow Farmiloe to return. (Plaintiff's Response, Farmiloe Aff., ¶ 5.)

In January of 1992, Farmiloe approached Rollins a third time about returning to work and presented Rollins with a return to work form from Dr. Saran. (Defendant's Motion, Rollins Aff., ¶ 18.) Rollins repeated his earlier request that Farmiloe authorize a release of his medical records. (Defendant's Motion, Rollins Aff., ¶19.) After Farmiloe signed the release, Rollins sent the request to Kaiser Permanente; however, Kaiser Permanente did not release the records because Farmiloe again had changed his mind. (Defendant's Motion, Exh. G and Rollins Aff., ¶¶ 19-21.)

In mid to late 1996, Dr. Rasper, a podiatrist, evaluated Farmiloe and determined that, with lifts, Farmiloe could return to work without restrictions. (Defendant's Motion, Farmiloe Depo., p. 42-43 and Exh. H.) Dr. Rasper concluded that Farmiloe's back and neck problems were caused by one leg being shorter than the other. (Defendant's Motion, Farmiloe Depo., p. 42-43 and Exh. H.) As Dr. Rasper was not an expert on back and neck problems, he referred Farmiloe to Dr. Stauffer-Rossi, a chiropractor. (Defendant's Motion, Exh. H.)

In January 1997, Dr. Stauffer-Rossi examined Farmiloe. (Defendant's Motion, Exh. I.) Dr. Stauffer-Rossi noted the discrepancy in Farmiloe's leg lengths, diagnosed him with lumbar segmental dysfunction and treated him accordingly. (Defendant's Motion, Exh. I.) Dr. Stauffer-Rossi determined that Farmiloe had responded well to treatment and could return to work without restrictions. (Defendant's Motion, Exh. I.)

On April 8, 1997, Farmiloe sent a letter to Jerry O'Conner at Ford's Hourly Personnel and requested that Ford allow him to return under the UAW-Ford policy. (Plaintiff's Motion, Farmiloe Aff., ¶ 7 and Attach. 14; Defendant's Motion, Farmiloe Depo., p. 72-73 and Exh. J.) The same day, James Lyons, Farmiloe's attorney, sent a letter to O'Conner that included the

information required under the UAW-Ford return to work policy. (Defendant's Motion, Exh. K.) In addition, Attorney Lyons sent a letter to Robert Battle, the Local Union President, which requested his assistance. (Defendant's Motion, Exh. L.)

On November 18, 1997, Dr. Kravitz, a John Hancock physician,[2] examined Farmiloe. (Plaintiff's Response, Farmiloe Aff., ¶ 10 and Attach. 17; Defendant's Motion, Farmiloe Depo., p. 129.) Dr. Kravitz's examination revealed no health problems except inactive ulcerative colitis and a foreshortened right leg that was corrected with a lift. (Defendant's Motion, Exh. M.) Farmiloe did not reveal any health problems to Dr. Kravitz. (Defendant's Motion, Exh. M.)

On November 21, 1997, John Hancock sent Farmiloe a letter indicating that, based upon Kravitz's examination, he was no longer disabled. (Defendant's Motion, Exh. N.) Accordingly, Farmiloe's disability benefits terminated on November 18, 1997. (Defendant's Motion, Exh.. N.)

Between November 11 and December 4, 1997, Farmiloe met with Mike Murphy, Ford's Supervisor of Personnel and Labor Relations, at the Walton Hills plant in order to determine a starting date. (Plaintiff's Response, Farmiloe Aff., ¶ 11.) Murphy recommended that Farmiloe undergo a mental health fitness test or interview with Kaiser Permanente. (Plaintiff's Response, Farmiloe Aff., ¶ 11.) As a result, Farmiloe met with and was evaluated by Barbara Eady ("Eady"), a Kaiser Permanente Psychiatric Social Worker, on December 4, 1997. (Plaintiff's Response, Farmiloe Aff., ¶11 and Attach. 2.) Eady determined that Farmiloe "present[ed] no behavior today that would interfere with working." (Plaintiff's Response, Attach. 2.)

Also on December 4, 1997, Farmiloe met with Murphy and Rollins. (Plaintiff's

---

[2] John Hancock was Ford's insurance carrier that administered disability insurance payments. (Defendant's Motion, p. 5.)

Response, Farmiloe Aff., ¶ 12; Defendant's Motion, Rollins Aff., ¶ 22.) Farmiloe informed Murphy that he had successfully completed the mental health assessment and was ready to return. (Plaintiff's Response, Farmiloe Aff., ¶ 12.) Farmiloe also informed Murphy that Ford could obtain a copy of Eady's report and informed Rollins that Eady would provide him with a summary of her report. (Plaintiff's Response, Farmiloe Aff., ¶ 12; Defendant's Motion, Farmiloe Depo., pp. 91-92, 131 and Rollins Aff., ¶ 23.) When Rollins contacted Eady the next day, he was told that Eady would obtain a release for the records from Farmiloe. (Defendant's Motion, Rollins Aff., ¶ 25.) Eady then contacted Farmiloe, informed him that Ford had requested all of his mental heath records and recommended that he not release his entire mental health records. (Plaintiff's Response, Farmiloe Aff., ¶ 13 and Attach. 2.) Farmiloe agreed with Eady's recommendation and refused to release his entire mental health record. (Plaintiff's Response, Farmiloe Aff., ¶ 13.)

On March 17, 1998, Farmiloe filed a complaint with the EEOC alleging that Ford violated the Americans with Disabilities Act. (Plaintiff's Response, Farmiloe Aff., ¶ 15 and Attach. 15.) The EEOC issued a right to sue letter on August 12, 1998. (Plaintiff's Response, Farmiloe Aff., ¶ 17 and Amended Complaint Exh. A.)

On March 24, 1998, Rollins contacted Eady to determine why he had not received the medical records. (Defendant's Motion, Rollins Aff., ¶ 26.) Eady informed Rollins that Farmiloe had refused to release his entire mental health records. (Defendant's Motion, Rollins Aff., ¶ 27.) Rollins then contacted Farmiloe to request his mental health records again. (Plaintiff's Response, Farmiloe Aff., ¶ 16; Defendant's Motion, Rollins Aff., ¶ 29.) Farmiloe refused to release his entire mental health records and informed Rollins that under the ADA he was not

required to release those records. (Plaintiff's Response, Farmiloe Aff., ¶ 16; Defendant's Motion, Rollins Aff., ¶ 30.)[3]

## Legal Standard

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56. In assessing the merits of the motion, the court shall draw all justifiable inferences from the evidence presented in the record in the light most favorable to the non-moving party. *See Woythal v. Tex-Tenn Corp.*, 112, F.3d 243, 245 (6th Cir.), *cert. denied*, 522 U.S. 967 (1997). The court's favorable treatment of facts and inferences, however, does not relieve the non-moving party of the responsibility to go beyond the pleadings to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

An opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

---

[3] Ford has included several facts within its Motion for Summary Judgment that are not included in the above recitation of facts for a variety of reasons. For example, Ford alleges that Farmiloe shot his wife's dog. Farmiloe maintains his behavior was in self-defense. Ford also alleges, based upon a citation to Farmiloe's deposition, that Farmiloe was convicted of solicitation of underage females. However, the cited section of Farmiloe's deposition does not support that allegation. Finally, Ford devotes a lengthy section of its Motion to Farmiloe's work as "Dr. Mystik" and his prescription of potions for his patients. However, in this Court's view, these allegations do not establish a mental condition or a job related disability.

Accordingly, viewing the evidence in the light most favorable to the non-moving party, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251.

**Analysis**

In the only remaining Count in the amended complaint, Farmiloe alleges that Ford violated the Americans with Disabilities Act ("ADA") by refusing to rehire him and by asking for "all of the medical records of the Plaintiff as a precondition to rehiring and/or returning the Plaintiff to work." (Amend. Comp. ¶ 21). Ford argues that the ADA permitted it to request Farmiloe's medical records and that it has refused to rehire Farmiloe, not on the basis of his alleged disability, but because he failed to complete the application process. The medical information Ford legitimately could request before allowing Farmiloe to return to work depends upon Farmiloe's status under the ADA at the time he attempted to return, *i.e.*, whether Farmiloe was (1) an employee, (2) a post-offer pre-employment applicant, or (3) a pre-offer applicant. *See* 42 U.S.C. § 12112(d)(2), (3), and (4). There are no cases directly on point.

Both parties implicitly acknowledge that Farmiloe does not fit perfectly within any of the three categories of persons covered under these provisions of the ADA. Ford contends that Farmiloe should be treated like a current employee or, alternatively, a post-offer pre-employment applicant. Under these two categories, an employer may conduct a broader inquiry into the individual's medical condition and ability to perform job-related functions that it can for an individual who is a pre-offer applicant. Farmiloe contends that he should be treated like a pre-offer applicant.

For the reasons set forth below, this Court finds that Farmiloe is most like a post-offer pre-employment applicant. However, under that standard, Ford must show that it did not request more information from Farmiloe than it requested of other returning disability retirees or that its request for additional information was prompted by the results of a medical review/examination to which all returning disability retirees are subjected. Ford has not demonstrated either. Therefore, Ford is not entitled to summary judgment.

***A. Current Employee - 42 U.S.C. § 12112(d)(4)***

With regard to an "employee," an employer covered by the ADA "may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site. A covered entity may make inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B). Farmiloe contends that he was not an "employee" returning from medical leave when he attempted to return to Ford. The ADA's definition of an employee provides no guidance on this issue; it defines an employee as "an individual employed by an employer." 42 U.S.C. § 12111(4); 29 C.F.R. § 1630.2(f); *see also Owens v. Southern Dev. Council, Inc.*, 59 F. Supp.2d 1210, 1214 (M.D. Ala. 1999). As Title VII and the ADA contain the same definition of an "employee," *see* 42 U.S.C. § 2000e(f), cases defining an employee in Title VII cases are readily applied to ADA cases. *See Owens*, 59 F. Supp.2d. 1210 at 1214.

In *Walters v. Metropolitan Educ. Enters., Inc.*, 519 U.S. 202 (1997), the Supreme Court defined an "employee" for purposes of Title VII under a two-prong analysis, both of which must be present for an individual to be an "employee." *Id.* at 211; *Owens*, 59 F. Supp.2d. 1210 at 1214. The first prong is called the "payroll method" and is "most readily demonstrated by the

individual's appearance on the employer's payroll." *Waters*, 519 U.S. 202 at 206, 211; *Owens*, 59 F. Supp.2d 1210 at 1214. Under the second prong, the individual also must be an employee under traditional agency principles. *See Walters*, 519 U.S. 202 at 211, (*citing Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992)). In *Nationwide*, the Supreme Court described this traditional approach as follows:

> 'In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.'

*Nationwide* 503 U.S. 318 at 323 (*quoting Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-752 (1989)). This "common-law test contains 'no shorthand formula or magic phrase that can be applied to find the answer, . . . all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.'" *Nationwide*, 503 U.S. 318 at 324 (*quoting NLRB v. United Ins. Co. of America*, 390 U.S. 254, 258 (1968)).

In his deposition, Farmiloe denied receiving any income from Ford. (*See* Defendant's Motion - Plaintiff's Depo., p. 54.) Farmiloe also denied receiving any retirement benefits from Ford. *See id.* Ford does not contest these facts, presents no evidence that Farmiloe is on its payroll, and despite the argument to the contrary in its brief, has admitted that Farmiloe is not a current employee. (*See* Plaintiff's Response, Attach. 4 - Defendant's Response to Plaintiff's

Second Set of Interrogatories and Second Request for Production of Documents, #15.) Also, Ford does not allege that it had any of the rights of an "employer" as outlined in *Nationwide* at the time Farmiloe attempted to rejoin Ford. Accordingly, Farmiloe is not an employee of Ford under either the "payroll method" or the traditional principles of agency law.

In support of its argument that Farmiloe should be treated like an employee returning from medical leave, Ford merely cites to cases (only one of which is from this Circuit) that are readily distinguishable. These cases do not address the test to determine Farmiloe's status under the ADA and do not justify a wholesale request for "all medical records." Unlike Farmiloe, who was not an employee and was retired, in the cases cited by Ford: the plaintiff was off work due to an on-the-job injury,[4] the plaintiff requested an accommodation in order to return to work,[5] the plaintiff was on paid leave or sick leave,[6] the plaintiff did not contest the propriety of the

---

[4] *Porter v. United States Alumoweld Co., Inc.*, 125 F.3d 243 (4th Cir. 1997) (plaintiff off work due to an on-the-job injury); *Hogan v. Bangor and Aroostook Railroad Co.*, 61 F.3d 1034 (1st Cir. 1995) (plaintiff off work due to an on-the-job injury and medical request for injury related records).

[5] *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667 (1st Cir. 1995) (plaintiff off work for mental health reasons and seeking an accommodation in order to return to work); *Reigel v. Kaiser Foundation Health Plan of North Carolina*, 859 F. Supp. 963 (E.D. N.C. 1994) (employee, whose request for accommodation in returning to work and whose conduct while on medical leave due to physical injury raised concerns about her mental health, was required to submit to mental health examination but was not required or requested to release her entire mental health records).

[6] *Miller v. Champaign Community Unit School District*, 983 F. Supp. 1201 (C.D. Ill. 1997) (employee on paid leave of absence pending outcome of an ordered psychiatric examination due to employee's increasingly disturbing behavior at work); *Sullivan v. River Valley School District*, 20 F. Supp.2d 1120 (W.D. Mich. 1998) (plaintiff suspended with pay and ordered to undergo mental examination based upon his disruptive and manipulative behavior at work); *Rodriguez v. Loctite Puerto Rico, Inc.*, 967 F. Supp. 653 (D. Puerto Rico 1997) (company's request that plaintiff employee submit to medical examination before returning from

employer obtaining medical information,[7] the employer sought to evaluate the plaintiff's condition due to the plaintiff's on-the-job behavior,[8] and the plaintiff was not disabled under the ADA.[9]

Farmiloe is not an employee nor is he remotely similar to an employee. Farmiloe was not on medical leave, but on disability retirement. Unlike a person on medical leave, Farmiloe cannot return to his job as soon as his medical condition improves. Under the UAW-Ford agreement, Farmiloe must wait for a position to become available and is not necessarily entitled to his prior job. (*See* Defendant's Motion, p. 13.) Moreover, the defendant notes in its Motion for Summary Judgment that Farmiloe is in the process of completing an application for employment. (*See* Defendant's Motion, p. 14, n. 3.) The defendant has not cited any authority for the proposition that an employee returning from medical leave must file an application before

---

two month sick leave was justified).

[7] *Pesterfield v. Tennessee Valley Authority*, 941 F.2d 437 (6th Cir. 1991) (plaintiff, who was fired because of physician's report and his violent outbursts at work, brought ADA suit but did not contest propriety of release of medical information from physician to company).

[8] *Miller v. Champaign Community Unit School District*, 983 F. Supp. 1201 (C.D. Ill. 1997) (employee on paid leave of absence pending outcome of psychiatric examination due to employees increasingly disturbing behavior at work); *Sullivan v. River Valley School District*, 20 F. Supp.2d 1120 (W.D. Mich. 1998) (plaintiff suspended with pay and ordered to undergo mental examination based upon disruptive and manipulative behavior at work); *Pesterfield v. Tennessee Valley Authority*, 941 F.2d 437 (6th Cir. 1991) (plaintiff, who was fired because of physician's report and his violent outbursts at work, brought ADA suit but did not contest propriety of release of medical information from physician to company); *Metzenbaum v. John Carroll Univ.*, 987 F. Supp. 610 (N.D. Ohio 1997) (plaintiff employee was ordered to undergo examination based upon conduct observed at a judicial hearing held because of employee's failure to release results of uncontested employer ordered psychological examination required of all employees).

[9] *Rio v. Runyon*, 972 F. Supp. 1446 (S.D. Fla. 1997) (court found plaintiff, who was on light duty restrictions due to physician's instructions, was not disabled or an otherwise qualified individual).

returning to work. *See id.*

Based upon the foregoing, this Court concludes that Farmiloe is not an employee and the analogy between Farmiloe and an employee returning from medical leave advanced by Ford is not persuasive.[10] Thus, it is not necessary to determine whether Ford's request for all of Farmiloe's mental health records was appropriate under the standards that govern medical examinations of and records sought from a current employee returning to work.

***B. Pre-Offer Applicant - 42 U.S.C. § 12112(d)(2)***

With regard to a pre-offer applicant, an employer covered by the ADA "may make preemployment inquiries into the ability of an applicant to perform job-related functions." 42 U.S.C. § 12112(d)(2)(B). Farmiloe argues that he is a pre-offer applicant because he was not a Ford employee at the time he applied for a job in 1997. Ford counters that Farmiloe is not a pre-offer applicant because he enjoys rights with Ford that non-disability retiree applicants do not. As Ford correctly notes, the return policy and other memoranda of agreement between the UAW

---

[10] Even assuming that an analogy could be made between Farmiloe and an employee returning from medical leave, Ford's request for all of Farmiloe's mental health records would exceed the limited scope of permissible requests. An employer can only conduct a medical inquiry of an employee that is job-related and consistent with business necessity. *See* 42 U.S.C. § 12112(d)(4); *EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities*, No. 915.002 (March 25, 1997) ¶ 14. However, when an employee returns to work following a medical leave of absence, a request for medical records or an examination must be limited to the effect of her medical condition that necessitated her leave on her ability to perform essential job functions, either with or without accommodation. *See EEOC Guidance supra,* ¶ 14, Ex. D. If the employee was on medical leave for depression which necessitated a hospital stay and a medication adjustment, the employer's inquiries on her return as to "her entire psychiatric history or about the details of her therapy sessions would, for example, exceed this limited scope." *Id.* Here, Farmiloe was on disability retirement due to neck and back pain. (*See* Plaintiff's Response, Farmiloe Aff., ¶ 3.) Therefore, Ford's request for all of Farmiloe's mental health records would exceed the scope of Farmiloe's disability retirement and be violative of the ADA if he were an employee returning to work from medical leave.

and Ford provide certain and specific rights to disability retirees. *(See* Defendant's Motion, p. 9 and Exhs. E & O.) These rights demonstrate an affiliation between Ford and Farmiloe that are not present with non-disability retiree applicants, *i.e.*, Ford must allow a disability retiree to return to work when his or her disability ceases and a position becomes available. As non-disability retiree applicants do not enjoy this same "benefit," Farmiloe has a considerable advantage over non-disability retiree applicants, as well as a considerable advantage over applicants who have no prior relationship with Ford.

As Farmiloe's situation is readily distinguishable from that of a pre-offer applicant, Farmiloe's claim that he should be treated like a pre-offer applicant is without merit.

***C. Post-Offer Pre-Employment Applicant - 42 U.S.C. § 12112(d)(3)***

The remaining category of applicants is generally referred to as "post-offer pre-employment applicants." The ADA defines this type of applicant as someone to whom "an offer of employment has been made [but is] prior to the commencement of the employment duties [of that person]." 42 U.S.C. § 12112(d)(3). The only condition mentioned in the statute for this type of applicant is passing a required medical examination. *Id.; Buchanan v. San Antonio*, 85 F.3d 196, 199 (5th Cir. 1996). Farmiloe does not fit precisely within this category of persons because his return to Ford is conditioned not only upon recovery from his medical disability, *but also the presence of a job opening.*

However, the EEOC's written interpretive materials indicate that a person may be categorized as a post-offer pre-employment applicant even if the offer is not based upon an actual current opening. *See EEOC Notice: ADA Enforcement Guidance: Preemployment Disability-*

*Related Questions and Medical Examinations*, No. 915.002 (Oct. 10, 1995) p. 12.[11] The EEOC's position is rational, reasonable, and an apparently permissible construction of the statute, and is entitled to some deference. *See Gilday*, 124 F.3d at 766. As such, the additional condition that a position become vacant before Farmiloe begins actual work is not one that should preclude Farmiloe from being treated as a post-offer pre-employment applicant.

Farmiloe asserts he is not a post-offer pre-employment applicant because Ford has not extended an offer of employment to him. (*See* Plaintiff's Response, p. 18.) While it is technically true that Ford has never formally extended an offer to Farmiloe, the agreement between the UAW and Ford is reasonably construed as a standing offer of employment. Under the agreement, a disability retiree has the right to return to work upon the presence of a job opening and the cessation of his or her disability. Therefore, as Farmiloe is a disability retiree, a member of the UAW, and subject to this agreement, this Court is satisfied that an offer of employment has been made to Farmiloe.

Based upon the above, it is this Court's view that Farmiloe is most like a post-offer pre-employment applicant and should be treated as such. Thus, it is now necessary to determine whether Ford's request for all of Farmiloe's mental health records was appropriate under the standards that govern examinations of a post-offer pre-employment applicants.

Under the ADA, an employer may "require a medical examination [of post-offer pre-

---

[11] This Circuit has recognized that "administrative interpretations of the [ADA] by the enforcing agency, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may property resort for guidance." *Gilday v. Mecosta County*, 124 F.3d 760, 766 (6th Cir. 1997) (citations omitted); *see also Barnes v. Cochran*, 944 F. Supp 897, 904 (S.D. Fla. 1996) (*quoting Meritor Savings Band, FSB v. Vinson*, 477 U.S. 57, 65 (1986)) (same).

employment applicants] and may condition an offer of employment on the results of such examination, if -- (A) all entering employees are subjected to such an examination regardless of disability . . ." 42 U.S.C. § 12112(d)(3). A medical examination at this stage is

> not required to be job-related and consistent with business necessity. However, if an employer withdraws an offer of employment because the medical examination reveals that the employee does not satisfy certain employment criteria, either the exclusionary criteria may not screen out or tend to screen out an individual with a disability or a class of individuals with disabilities, or they must be job-related and consistent with business necessity.

29 C.F.R. § 1630.14(b). Therefore, once an offer of employment has been made to an applicant, an employer may "make unlimited medical inquiry, as long as all applicants for that job category are given the same medical examination or subjected to the same medical inquiry." Theresa L. Clark, *A Map for the Labyrinth: How to Conduct Job Interviews and Obtain Medical Information Without Violating the Americans with Disabilities*, 13 Lab. Law. 121, 135 (1997).

Here, Farmiloe challenges Ford's request for all of Farmiloe's mental health records. Ford contends that it requested all of Farmiloe's mental health records because it was "well aware of Plaintiff's history of substance abuse, psychiatric problems, and violent tendencies," possibly suggesting that there is a business necessity for delving into Farmiloe's medical files. (Defendant's Motion for Summary Judgment, p. 14.) Ford's argument fails for several reasons. First, there is no evidence in the record to support this alleged history except the affidavit of Rollins, which does not cite to any evidence. Second, this is an overstatement of what facts do exist in the record and it appears that Ford has taken some liberty with its characterization of the facts. *See e.g., note* 3, *supra.* Third, Farmiloe agreed to submit to a mental health exam and to

release a summary of the exam to Ford. Ford, however, was not satisfied with this and requested information far exceeding the scope of its stated concern.[12] Fourth, this "history" allegedly occurred during Farmiloe's prior employment with Ford, yet he continued to work at Ford until he retired for back and neck problems. Finally, and most significantly, Ford must show that ". . . all entering employees are subjected to such an examination regardless of disability . . ." 42 U.S.C. § 12112(d)(3)(A).

Contrary to Ford's argument that, at the post-offer pre-employment stage, it has the right to "request additional medical information of specific individuals so long as the request for additional information is 'medically related to the previously obtained medical information,'" such a right is tempered by the same EEOC Guidance. (Defendant's Motion for Summary Judgment, *quoting EEOC Notice: ADA Enforcement Guidance: Preemployment Disability-Related Questions and Medical Examinations*, No. 915.002 (Oct. 10, 1995) p. 13.) The EEOC Guidance permits an employer to request the information as Ford quotes, but only "[a]fter an employer has obtained basic medical information from all individuals who have been given conditional offers in a job category. . ." *EEOC Notice supra*. Ford has not detailed any argument or presented any evidence to this Court applying the standard to this case; *i.e.*, whether its request of Farmiloe's entire mental health records is a request made to all individuals or the specific request for additional information prompted by the results of a medical review/examination to

[12]For example, all medical records likely would contain a listing of all medications. An employer's ability to request information concerning an employee's use of prescription drugs is in doubt. *See Roe v. Cheyenne Mountain Conference Resort*, 920 F. Supp. 1153, 1155 (D. Colo. 1996), *overruled on other grounds*, 124 F.3d 1221 (10th Cir. 1997).

which all returning disability retirees are subjected. This Court does not have the facts to determine: (1) whether Ford requires all post-offer pre-employment applicants to submit all of their mental health records, (2) whether Ford's request for Farmiloe's entire mental health records is a request for additional information based upon its review of his past medical file with Ford, (3) whether Ford reviews all of the returning disability retiree's medical files with Ford, (4) whether Ford regularly requests non-disability retirement related medical records, and (5) whether Ford's request for Farmiloe's entire mental health record is reasonable under the ADA. Without such facts, this Court cannot say, as a matter of law, that Ford's request was appropriate under the ADA. Accordingly, summary judgment is inappropriate.

**Conclusion**

For the forgoing reasons, the Court recommends that the defendant's Motion for Summary Judgment (Doc. No. 13) be DENIED.

Nancy Vecchiarelli

Nancy A. Vecchiarelli
U.S. Magistrate Judge

Date: 23 March 2001

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of this notice. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**